ALEXANDER ROMAN, Appellant, *v.* JULIANA LOBE, Respondent.

Second Department, March 6, 1925.

Brokers — real estate brokers — licenses — action to recover commissions on sale of property in Brooklyn made through plaintiff — plaintiff's license expired September 30, 1923, and new license was granted October 27, 1923 — contract of sale was executed October 16, 1923 — Real Property Law, § 442-e, prevents recovery — constitutional law — Real Property Law, art. 12-A, as added by Laws of 1922, chap. 672, relating to licensing of real estate brokers in certain counties, is constitutional.

Section 442-e of the Real Property Law, which, in effect, provides that a person who was not a duly licensed real estate broker on the day when an alleged cause of action for compensation for services rendered arose, cannot maintain such an action, prevents a real estate broker from recovering commissions on the sale of property in Brooklyn, where it appears that his license expired on September 30, 1923; that the contract of sale was executed on October 16, 1923; and that although he mailed his application for a new license on October 12, 1923, the new license was effective from October 26, 1923, so that at the time the sale was consummated he was not a duly licensed broker.

Article 12-A of the Real Property Law, as added by chapter 672 of the Laws of 1922, relating to the licensing of real estate brokers in certain counties in the

State, providing strict rules for the granting of licenses to applicants, and for supervision over their acts and conduct when once they have been licensed, which was enacted, ostensibly at least, for the purpose of protecting buyers and sellers of real property from incompetent or dishonest brokers, is constitutional.

APPEAL by the plaintiff, Alexander Roman, from an order and determination of the Appellate Term of the Supreme Court, Second Department, entered in the office of the clerk of the county of Kings on the 16th day of June, 1924, affirming a judgment of the Municipal Court of the City of New York, Borough of Brooklyn, Fourth District, in favor of the defendant, and also from an order entered in said clerk's office on the 11th day of July, 1924, denying plaintiff's motion for a reargument of the appeal or leave to appeal to the Appellate Division.

*Abraham Feinstein* [*Louis J. M. Druss* with him on the brief], for the appellant.

*Peter B. Hanson*, for the respondent.

KELBY, J.:

Section 440-a of the Real Property Law (added by Laws of 1922, chap. 672, as amd. by Laws of 1923, chap. 517, and since amd. by Laws of 1924, chap. 579) provides that on and after the 1st day of October, 1922, " no person * * * shall engage in or follow the business or occupation of, or hold himself * * * out or act temporarily or otherwise as a real estate broker * * * in a city, or in a county adjoining a city having a population of one million or more, * * * without first procuring a license therefor as provided in this article." By section 442-e thereof (added by Laws of 1922, chap. 672, as since amd. by Laws of 1924, chap. 579) it is provided: " No person * * * shall bring or maintain an action in any court of this State for the recovery of compensation for services rendered, in any place in which this article is applicable, in the buying, selling, exchanging, leasing, renting, or negotiating a loan upon any real estate without alleging and proving that such person was a duly licensed real estate broker * * * on the date when the alleged cause of action arose."

The plaintiff sued to recover, as real estate broker, a commission for his services in effecting the sale of a parcel of real property situate in the borough of Brooklyn. He had been engaged as broker by defendant, the owner of the property, and was the procuring cause of the sale. He brought to the defendant a person who was ready, willing and able to buy the property at defendant's price and on defendant's terms, and a contract of purchase and sale was executed on the 16th of October, 1923. This action was brought on October 29, 1923.

The plaintiff had been operating as a real estate broker under a certificate of license which by its terms expired on September 30, 1923.   On October 12, 1923, he mailed to the State Tax Department at Albany an application, accompanied with the required fee, for a new certificate of license.   The new certificate was by its terms "valid from October 26, 1923, to September 30, 1924."

As provided by section 442-e, no person, within the territory stated, may bring or maintain an action to recover compensation for services rendered in the selling of real estate without alleging and proving that he was a duly licensed real estate broker "on the date when the alleged cause of action arose."   In the absence of a specific agreement, a right of action for commissions arises "when the broker produces to his principal a party with whom the owner is satisfied and who contracts for the purchase at a price acceptable to the owner."   (*Brady* v. *Foster*, 72 App. Div. 416, 419.)   In the case under review the cause of action arose on October 16, 1923, at a time when the plaintiff, as the record shows, was without a license.   At the close of the trial the court granted defendant's motion to dismiss the complaint upon the ground that the plaintiff had failed to show that he was a licensed real estate broker at the time the alleged cause of action arose.   The plaintiff appeals, and the question presented involves the constitutionality of the act in question.   (Laws of 1922, chap. 672, adding to Real Prop. Law, art. 12-A.)   (See U. S. Const. 14th Amendt. § 1;  State Const. art. 1, §§ 1, 6.)

The statute was enacted, ostensibly at least, for the purpose of protecting buyers and sellers of real property from incompetent or dishonest brokers.   For instance, section 441, subdivision 1, paragraph (e), of the Real Property Law (added by Laws of 1922, chap. 672, as since amd. by Laws of 1924, chap. 579) provides, among other requirements, that an applicant for a real estate broker's license shall set forth "Such further information as the State Tax Commission may reasonably require to enable it to determine the trustworthiness of the applicant   *   *   *   and his   *   *   *   competency to transact the business of real estate broker   *   *   *   in such a manner as to safeguard the interests of the public."   Paragraph (e) of said subdivision also provides, by amendment of 1924, made since this action was commenced, that in determining the applicant's competency the Commission may require proof that he has "a fair knowledge of the English language, a fair understanding of the general purposes and general legal effect of deeds, mortgages, land contracts of sale, and leases, and a general and fair understanding of the obligations between principal and agent, as well as of the provisions of this act."   Section 441-a (added by Laws of 1922,

chap. 672, as since amd. by Laws of 1924, chap. 579) provides for the issuance of a license by the Commission " if satisfied of the competency and trustworthiness of the applicant." Section 441-c (as added by Laws of 1922, chap. 672) provides for the revocation of a license, for such period as may be deemed proper, " upon conviction of the licensee of a violation of any provision of this article, or for a material misstatement in the application for such license, or if such licensee has been guilty of fraud or fraudulent practices, or has demonstrated untrustworthiness or incompetency to act as a real estate broker." It is also provided by section 442-f (added by Laws of 1922, chap. 672, as since amd. by Laws of 1924, chap. 579) that a person who violates any provision of the article shall be guilty of a misdemeanor; and in case the offender shall have received any sum of money as commission, compensation or profit by or in consequence of his violation of any provision of the article, he shall also be liable to a penalty of not less than the amount of money so received by him, and not more than four times the amount of said sum, as may be determined by the court; the penalty to be sued for and recovered by the person aggrieved. The amendment of 1924 to section 442-f provides that " The commission of a single act prohibited by this article shall constitute a violation hereof."

It is thus clear that with a view to placing and keeping the real estate brokerage business in the hands of competent and trustworthy persons the Legislature has prescribed strict rules for the granting of licenses to applicants and for supervision over their acts and conduct when once they have been licensed.

In *People* v. *Beakes Dairy Co.* (222 N. Y. 416), the court, following the language of *Brazee* v. *Michigan* (241 U. S. 340, 343), says: " Any trade, calling or occupation may be reasonably regulated if ' the general nature of the business is such that unless regulated many persons may be exposed to misfortunes against which the Legislature can properly protect them.' " The *Beakes* case discusses section 55 of the Agricultural Law (added by Laws of 1913, chap. 408, as amd. by Laws of 1915, chap. 651) which provides that no person, firm, association or corporation shall, as a business, buy milk or cream within the State for the purpose of shipping it to any city for consumption or manufacture, unless such person, firm, association or corporation shall be licensed. Instancing various trades and occupations, the regulation of which has been held to be constitutional, the court said: " Passing from the general to the particular, the constitutionality of the ' Blue Sky Laws ' of Ohio and other States which require dealers in corporate stocks and other securities to be licensed has been upheld. (*Hall* v. *Geiger-Jones Co.*, 242 U. S. 539; *Caldwell* v. *Sioux Falls Stock Yards*

*Co.,* 242 U. S. 559; *Merrick* v. *Halsey & Co.,* 242 U. S. 568.) The evils of ' get-rich-quick ' schemes called for protection against the frauds of unscrupulous dealers. Licenses may be required for employment agencies. (*Brazee* v. *Michigan, supra; People ex rel. Armstrong* v. *Warden, etc.,* 183 N. Y. 223.) The business of banking by individuals and partnerships has been held subject to license (*Musco* v. *United Surety Co.,* 196 N. Y. 459, 465; *Engel* v. *O'Malley,* 219 U. S. 128) ' because fraud could be practiced in it.' The business of selling patent rights, being peculiarly one in which fraud may be practiced, may be regulated. [*Allen* v. *Riley,* 203 U. S. 347.] Even ' ice cream ' may be standardized by State Legislatures in order that consumers may not be misled (*Hutchinson Ice Cream Co.* v. *Iowa,* 242 U. S. 153), and a standard size of bread loaves may be fixed. (*Schmidinger* v. *City of Chicago,* 226 U. S. 578.) "

In *Biddles, Inc.,* v. *Enright* (239 N. Y. 354) the Court of Appeals held to be constitutional section 1991 of the Consolidation Act (Laws of 1882, chap. 410, as amd. by Laws of 1918, chap. 179), made applicable by section 1610 of the Greater New York charter (Laws of 1897, chap. 378; Laws of 1901, chap. 466), which, with specific exceptions, restricts to the " daytime, between sunrise and sunset," the selling of goods by public auction. Other occupations, the regulation of which has been held to be in accord with the fundamental law, are the plumbing trade (*People ex rel. Nechamcus* v. *Warden,* 144 N. Y. 529); the reselling of tickets of admission to theatres and other places of public amusement (*People* v. *Weller,* 237 id. 316). In *Groetzinger* v. *Forest Hills Terrace Corporation* (123 Misc. 274), where the constitutionality of the statute in question was under review, the court said: " Defendant claims that the statutory provisions referred to violate the fundamental law. Careful study, however, has led me to the conclusion that they are constitutional. This is clear from the trend of impressive authority on the subject of legislative regulation of occupations, including that of relator [realtor], under the police power." After citing many cases the court continues: " What makes for the general welfare is a matter of legislative judgment and judicial review is limited to power and excludes policy. *German Alliance Ins. Co.* v. *Lewis,* 233 U. S. 389."

The determination of the Appellate Term should be affirmed, with costs.

Present — Kelly, P. J., Rich, Jaycox, Kelby and Young, JJ.

Determination of the Appellate Term unanimously affirmed, with costs.