SHELDON PLOTKIN AND BARBARA PLOTKIN, INDI-
VIDUALLY AND DOING BUSINESS AS PAINTIN' PLACE
AND AMERICAN PAINT & SUPPLY COMPANY,
INC., APPELLANTS, v. NATIONAL LEAD COM-
PANY, RESPONDENT.

No. 6265

February 10, 1971                           482 P.2d 323

*David Abbatangelo,* of Las Vegas, for Appellants.

*Robert K. Dorsey,* of Las Vegas, for Respondent.

## OPINION

By the Court, THOMPSON, J.:

This appeal is from a summary judgment in favor of
National Lead and against the Plotkins and American Paint &
Supply in an action commenced by National Lead upon an

account stated in the sum of $1,702.36. There is no question but that American Paint was indebted to National Lead for that amount. However, that company is no longer in business. The core of the dispute is whether the Plotkins are likewise indebted by reason of having individually assumed American Paint's obligation, or upon the theory that they are the alter ego of American Paint. The lower court, in holding the Plotkins accountable for the debt, did not give its reasons. In reviewing all documents in support of and in opposition to the summary judgment motion, we have concluded that a genuine issue of material fact exists as to the liability of the Plotkins and reverse the judgment against them and remand for trial.

American Paint is a Wisconsin corporation which the Plotkins formed in 1967. The indebtedness which is the subject of this suit was incurred by American Paint. In the fall of 1968 the Plotkins left Wisconsin, moved to Las Vegas and established there a business under the fictitious name Paintin' Place. In December 1968, Mr. Plotkin wrote National Lead "regarding the balance we owe you through American Paint," and requested an extension of time within which to pay it. As a corporate officer of American Paint he felt a moral responsibility for the debt and believed that it could be paid from accounts receivable of American Paint if the requested extension of time was granted. Subsequently, in August 1969, Mrs. Plotkin acknowledged to counsel for National Lead that $1,702.36 was the correct indebtedness. Apparently, collection of American Paint's accounts receivable did not enable the Plotkins to pay the debt. The recitation above is given in the light most favorable to the Plotkins, since they are entitled to that advantage when summarily defeated upon motion without trial. Kaminski v. Woodbury, 85 Nev. 667, 462 P.2d 45 (1969).

It is apparent that under the facts as related there was not an assumption of the corporate debt. It is equally clear that the scanty record will not permit one to conclude, as a matter of law, that the alter ego doctrine should be applied. The record, at this moment, does not disclose that the corporation was governed by the Plotkins; that there was such a unity of interest and ownership that one is inseparable from the other; and that adherence to the fiction of separate entity would promote injustice. McCleary Cattle Co. v. Sewell, 73 Nev. 279, 317

P.2d 957 (1957). Perhaps a trial will prove alter ego. At this point, it is not established.

Affirmed as to American Paint; reversed and remanded for trial as to the Plotkins.

ZENOFF, C. J., BATJER, MOWBRAY, and GUNDERSON, JJ., concur.